# IN THE SUPREME COURT OF IOWA

No. 13–1615

Filed April 17, 2015

**STATE OF IOWA,**

     Appellee,

vs.

**JOHN PENN-KENNEDY,**

     Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Woodbury County, Todd A. Hensley, Judge.

The State seeks further review of a court of appeals decision reversing defendant's conviction for OWI finding the prosecution violated the speedy indictment rule. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Robert D. Tiefenthaler of Tiefenthaler Law Office, P.C., Sioux City, for appellant.

Thomas J. Miller, Attorney General, Heather R. Quick, Assistant Attorney General, Patrick Jennings, County Attorney, and Jacklyn Fox, Assistant County Attorney, for appellee.

**CADY, Chief Justice.**

In this appeal, we revisit the scope and application of the speedy indictment rule. The issue presented is whether this rule applies to require the dismissal of a prosecution for the crime of operating while intoxicated that arose from an arrest and prosecution for the crime of public intoxication when the defendant reasonably believed he had also been arrested for the crime of operating while intoxicated. The district court held that the speedy indictment rule did not require a dismissal of the subsequent prosecution for the crime of operating while intoxicated. We transferred the case to the court of appeals, which reversed the decision of the district court. On further review, we vacate the decision of the court of appeals and affirm the decision of the district court. We hold that the speedy indictment rule is not triggered for a prosecution of a public offense by an arrest that resulted in an earlier prosecution of a separate public offense arising from the same incident.

### I. Background Facts and Proceedings.

During the frigid early morning hours of January 19, 2012, Sioux City police officers responded to a report of an intoxicated man leaving a restaurant and preparing to operate his motor vehicle parked outside the restaurant. When officers arrived, they found John Penn-Kennedy, a Nebraska resident, sitting behind the steering wheel of his vehicle in the parking lot with the motor running. After questioning Penn-Kennedy, one of the officers entered the restaurant to interview the person who made the report. Two other officers remained outside with Penn-Kennedy. During this time, Penn-Kennedy told the officers he had driven to the restaurant from a bar and planned to drive home. An officer administered two field sobriety tests and a preliminary breath test. Penn-Kennedy failed the tests.

Without informing Penn-Kennedy he was under arrest, the officers handcuffed him and transported him to the police station. As the arresting officer was walking him into the station, Penn-Kennedy fell and injured his foot. The injury was severe enough that the officer transported him from the station to the hospital. At the hospital, the officer read Penn-Kennedy his *Miranda* rights and invoked implied-consent procedures to obtain a body specimen for testing to determine his alcohol concentration level. The officer requested a blood test for this purpose. Penn-Kennedy refused the test, but consented to provide a urine sample. After obtaining the urine sample, the officer told Penn-Kennedy he was under arrest for public intoxication in violation of Iowa Code section 123.46 (2011). Penn-Kennedy was then transported back to the station and booked for public intoxication. A criminal complaint for public intoxication was filed, and a prosecution for the offense followed. Penn-Kennedy was released from custody following an initial appearance.

On February 17, the police received the toxicology report on the urine sample provided by Penn-Kennedy. The report showed Penn-Kennedy had an alcohol concentration level at the time of his arrest in excess of the legal limit to operate a motor vehicle.

On May 18, the State filed a criminal complaint charging Penn-Kennedy with the crime of operating while intoxicated (OWI) in violation of Iowa Code section 321J.2. The complaint arose from the same incident that resulted in the public intoxication arrest 120 days earlier. An arrest warrant was issued, followed by an initial appearance on the complaint before a magistrate on July 31.

On August 7, the State filed a trial information against Penn-Kennedy charging him with OWI. The public intoxication charge

was still pending, and the parties agreed to consolidate it with the OWI charge for the purposes of trial. Penn-Kennedy then filed a motion to dismiss the trial information. He claimed the State was required to indict him under the speedy indictment rule for operating while intoxicated within forty-five days of his arrest on January 19 because he maintained a reasonable belief he had been arrested for OWI at the time. The district court denied the motion.

At a stipulated bench trial, Penn-Kennedy was found guilty of OWI, first offense. The public intoxication charge was dismissed.

Penn-Kennedy appealed from the judgment and sentence for OWI. The sole claim raised on appeal is that the trial court erred in failing to dismiss the case under the speedy indictment rule. We transferred the case to the court of appeals. It found the speedy indictment rule for the prosecution of the crime of OWI was triggered by the arrest for public intoxication because the State did not have probable cause to arrest him for public intoxication, only OWI. It concluded the officers did not observe the essential facts to support the public intoxication charge and could only have arrested Penn-Kennedy for the crime of OWI. Consequently, it concluded the State was required to indict Penn-Kennedy for OWI within forty-five days of the arrest and held the district court erred in failing to dismiss the prosecution. We granted further review.

## II. Standard and Scope of Review.

We review the district court's interpretation of the speedy indictment rule, Iowa Rule of Criminal Procedure 2.33(2)(*a*), for errors at law. *State v. Dennison*, 571 N.W.2d 492, 494 (Iowa 1997) (per curiam). "We are bound by the findings of fact of the district court if they are

supported by substantial evidence." *State v. Wing,* 791 N.W.2d 243, 246 (Iowa 2010).

### III. Application of Speedy Indictment Rule.

The right to a speedy trial in Iowa is derived from both our State and Federal Constitutions and is more specifically defined under the Iowa Rules of Criminal Procedure. *See id.* It is aligned with the venerable public policy of this state that "criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties." Iowa R. Crim. P. 2.33(2).

Iowa Rule of Criminal Procedure 2.33(2) divides a criminal prosecution into three segments and imposes a time limitation for each. The first segment pertains to the filing of an indictment and is also known as the speedy indictment rule. "[T]he court must order the prosecution to be dismissed" if "an indictment is not found against the defendant within 45 days" of an arrest. *Id.* r. 2.33(2)(*a*). The second segment pertains to the trial. "[T]he court must order the indictment to be dismissed" if the defendant is not "brought to trial within 90 days after indictment." *Id.* r. 2.33(2)(*b*). The prosecution must be dismissed if these time limitations are not observed unless good cause is shown or the right has been waived. *Id.* r. 2.33(2)(*a*)–(*b*). The third segment pertains to the entire case. "All criminal cases must be brought to trial within one year after the defendant's initial arraignment . . . unless an extension is granted by the court, upon a showing of good cause." *Id.* r. 2.33(2)(*c*).

As with all three segments of the speedy trial rule, the speedy indictment rule serves to " 'relieve an accused of the anxiety associated with' " the suspension of a prosecution, provide for the " 'reasonably prompt administration of justice,' " prevent the loss of evidence, and

maintain a fair process. *Wing,* 791 N.W.2d 246–47 (quoting *State v. Delockroy,* 559 N.W.2d 43, 46 (Iowa Ct. App. 1996)). In particular, the speedy indictment rule protects these objectives during the time period provided to file an indictment in a criminal case. Yet, an indictment is not normally the initial charging instrument brought against an accused that commences the criminal prosecution. Instead, a criminal prosecution is commenced upon the filing of the first charging instrument, including the filing of a "complaint." Iowa Code § 804.1 ("A criminal proceeding may be commenced by the filing of a complaint before a magistrate."); *see id.* § 801.4(7) (defining a "criminal proceeding" as "a proceeding in which a person is accused of a public offense"); *id.* § 801.4(13) (defining a "prosecution" as "the commencement, including the filing of a complaint, and continuance of a criminal proceeding"). The speedy indictment time period, however, does not begin with the commencement of the prosecution but with an arrest. *Wing,* 791 N.W.2d at 247. An arrest is the triggering event to commence the forty-five-day time period to file an indictment under the rule, supplanting the previous version of the rule's use of the date of prosecution as the trigger. *Id.*; *see also id.* at 255 (Cady, J., dissenting) (explaining the "held to answer" language from the previous version of the rule related to the initial court appearance).

Normally, the date of an arrest and the date of prosecution follow hand in hand. Thus, even though the date of arrest triggers the requirement to file an indictment, the arrest date is usually very close in time to the date that commences the prosecution. This approach is largely due to the procedure and protocol police are required to follow in making an arrest. *See generally* Iowa Code ch. 804. An arresting officer "must inform the person to be arrested of the intention to arrest," the

reason for the arrest, and his or her identity as a police officer. *Id.* § 804.14. The officer must also require the person to submit to the officer's custody. *Id.* The officer is then required to take the arrested person before a committing magistrate for an initial appearance without unnecessary delay. *Id.* §§ 804.21(1), .22; Iowa R. Crim. P. 2.2(1). The period of time between the arrest and the initial appearance normally must not exceed twenty-four hours. Iowa R. Crim. P. 2.1(2)(*d*). This narrow time frame relates to the broader right to a speedy trial, but is more associated with the rights afforded persons following an arrest, including the right to be informed of the accusations responsible for the arrest. *See* Iowa Const. art I, § 10 (describing rights of persons accused); Iowa Code ch. 804 (regulating arrests); Iowa R. Crim. P. 2.2 (describing initial court proceedings). The initial appearance requires a complaint to be filed if the person was arrested without a warrant and for the person to be informed of the charges and be given a copy of the complaint.[1] Iowa R. Crim. P. 2.2(1)–(2).

While the complaint commences a criminal prosecution, no person may be held to answer for a public offense greater than a simple misdemeanor without the additional presentation of a grand jury indictment or a trial information. Iowa Const. art. I, § 11 ("[N]o person shall be held to answer for [a criminal offense for which the maximum imprisonment exceeds 30 days], unless on presentment or indictment . . . ."); Iowa Code § 903.1(1)(*a*) ("For a simple misdemeanor, . . . [t]he

---

[1]An arrest can occur with or without a warrant. Iowa Code § 804.7. An arrest warrant is issued by a magistrate based on a complaint and affidavit filed before the magistrate that supports probable cause for the arrest. *Id.* § 804.1. When a police officer makes an arrest without a warrant, the complaint must be filed with the magistrate in conjunction with the initial appearance. *Id.* § 804.22; *see* Iowa R. Crim. P. 2.2(1).

court may order imprisonment not to exceed thirty days . . . .").  Thus, a criminal prosecution for an indictable offense must include the filing of an indictment or trial information, and the speedy indictment rule addresses the time frame during which this constitutional mandate must take place over the course of the prosecution.  *See* Iowa R. Crim. P. 2.4(2) ("Criminal offenses other than simple misdemeanors may be prosecuted to final judgment either on indictment or on information . . . ."); *id.* r. 2.33(2)(*a*).

Generally, the speedy indictment rule's time frame is sufficiently clear to guide the prosecutor in filing a timely indictment and protect the right of the accused to a speedy indictment, but confusion may occur concerning the point in time when a police encounter with a member of the public transforms into an arrest.  *See Wing*, 791 N.W.2d at 248–49. This uncertainty, in turn, can also hinder the arrest and prosecution from proceeding hand in hand.  *See State v. Davis*, 525 N.W.2d 837, 838, 840–41 (Iowa 1994) (finding violation of speedy indictment rule in case in which police officers had completed citation and complaint forms, but released defendant without filing them with the court to delay prosecution).  The two events become detached when a person reasonably believes a warrantless arrest has occurred during an encounter with police, while police assume the encounter ultimately ended without an arrest and with the release of the person from police custody without being taken before a magistrate for the initial appearance.  *See Delockroy*, 559 N.W.2d at 45–46 (finding arrest when defendant was taken into police custody and transported to station following a search of the home but was released without charges after a third party negotiated a deal for himself and defendant).  Without the filing of a complaint and an initial appearance following a warrantless

arrest, no court procedure exists to provide notice to the county attorney to file an indictment. If law enforcement officers later pursue the prosecution against a person under this circumstance, a question arises whether the speedy indictment rule requires the indictment to be filed within forty-five days of the time when the person reasonably believes he was arrested.

This question was the subject of our decision in *Wing*, 791 N.W.2d at 244. In that case, the defendant was indicted for possession of marijuana with intent to deliver approximately five months after a roadside search by police of a motor vehicle he occupied disclosed a brick of marijuana in the trunk. *Wing*, 791 N.W.2d at 244–46. He acknowledged ownership of the drugs at the scene and was handcuffed and placed in the backseat of a patrol car. *Id.* at 245. He was later released from custody, however, after he expressed an interest in cooperating with law enforcement in various drug investigations. *Id.* The defendant was not taken before a magistrate for an initial appearance. Instead, the encounter ended after police drove him to his home, conducted a consent search of the premises, and reached an understanding with him to discuss further his cooperation in future drug investigations. *Id.* Five months later, a criminal complaint for possession of marijuana with intent to deliver was filed against the defendant. *Id.* at 245–46. The prosecutor then filed a trial information charging the same crime approximately three weeks later. *Id.* at 246. We held the speedy indictment rule was violated because a reasonable person in the defendant's position would have believed he was arrested at the roadside encounter, and this arrest triggered the running of the speedy indictment rule. *Id.* at 252–53.

Penn-Kennedy seeks to apply the *Wing* rule in this case. *See id.* He claims he reasonably believed he was arrested for OWI during his police encounter on January 19, 2012, and the speedy indictment rule was violated when the indictment for OWI was not timely filed following the arrest. He claims the *Wing* rule applies to preclude the prosecution of all crimes a person reasonably believes can be the basis for the arrest if that belief is formed before the police inform the person of the specific crime of arrest and prosecution is commenced on that crime. *See id.*

The *Wing* rule is tied to the objectives served by the right to a speedy indictment. Even though no immediate prosecution followed the perceived warrantless arrest under the circumstances in *Wing*, the arrest nevertheless triggered the anxiety and other pitfalls of a suspended prosecution sought to be ameliorated by the speedy indictment rule. *Id.* at 246–47, 252–53 (recognizing a purpose of the speedy indictment rule is to relieve the person of the anxiety associated with a *suspended* prosecution).

In this case, the objectives of the speedy indictment rule were not similarly implicated. Penn-Kennedy may have experienced anxiety and other pitfalls by waiting to be indicted for OWI, but not because the prosecution was suspended awaiting the indictment. Instead, the pitfalls faced by Penn-Kennedy were implicated by the power of the prosecutor or grand jury to bring a separate indictment charging a different criminal offense any time within the statute-of-limitations period. *See State v. Combs*, 316 N.W.2d 880, 882 (Iowa 1982) (indicating the state is not required to bring all charges in a single prosecution); *see also* Iowa Code ch. 802 (establishing limitations on actions ranging from one year to no limit based on the crime). This consequence was not within the protections afforded by the speedy indictment rule. It is a consequence

faced by all persons accused of crimes and is protected by the statute of limitations applicable to most crimes. *Id.* § 802.3 (setting limitations for most felonies and aggravated and serious misdemeanors at three years).

The speedy indictment rule serves to protect against the pitfalls associated with a suspended prosecution. The rule does not impinge on the power of the prosecutor to select the crime to be prosecuted. *See Dennison*, 571 N.W.2d at 497 (noting it is beneficial to limit the rule to the crime for which the person was arrested and not require a prosecution to commence before crucial evidence is available to the prosecutor on other charges). Thus, the reasonable-person rule used to determine the time of a warrantless arrest in *Wing* is narrow and limited to those cases in which an arrest is not promptly followed by any prosecution. *Wing*, 791 N.W.2d at 252–53.

We staked out this approach early in our analysis of the speedy indictment rule following the 1978 changes to its present language. In *State v. Sunclades*, we said that the forty-five-day period to bring an indictment applies only to the public offense for which the defendant was arrested and any lesser included offenses. 305 N.W.2d 491, 494 (Iowa 1981). We specifically held that the time period did not apply "to all offenses arising from the same incident or episode." *Id.* Thus, in *Sunclades*, the speedy indictment rule applied only to the initial charge of attempted murder for which the defendant was arrested and not the later-filed separate charges of going armed with intent and assault while participating in a felony that arose out of the same incident. *Id.* at 494–95; *see also State v. Eichorn*, 325 N.W.2d 95, 96–97 (Iowa 1982) (holding a subsequently filed burglary charge was not precluded by the speedy indictment rule when the forty-five days had run for a robbery charge arising out of the same incident); *Combs*, 316 N.W.2d at 882–83 (holding

a theft charge arising out of the same facts as a tried charge of false use of a financial instrument was permissible). Moreover, public intoxication cannot be a lesser included offense of OWI, as the presence of an intoxicated person in a "privately owned motor vehicle either on the public street or in the public parking lot" is not considered to be public for purposes of the offense, and the submission to police authority upon removal from the vehicle is not voluntary and cannot support the volitional element of the general-intent crime. *State v. Lake*, 476 N.W.2d 55, 56–57 (Iowa 1991). Thus, public intoxication and OWI are not sufficiently related for the arrest for one offense to serve as the speedy indictment trigger for the other offense.

In this case, unlike *Wing*, the prosecution following the arrest was not suspended or delayed by the failure of the State to proceed to an initial appearance based on a complaint charging a public offense. Instead, the State pursued a criminal prosecution for public intoxication, a simple misdemeanor that did not require an indictment, and Penn-Kennedy was in no different position than all other defendants who face the possibility of multiple criminal prosecutions arising out of the same episode. *See Dennison*, 571 N.W.2d at 493, 497 (charging OWI after arrest for open container and revoked license); *State v. Lies*, 566 N.W.2d 507, 509 (Iowa 1997) (per curiam) (charging conspiracy as a separate offense rather than a lesser included offense of burglary). Furthermore, the state ultimately selects the charges to be prosecuted, not the accused.

Finally, the speedy indictment rule does not look behind the charge identified in the complaint filed in conjunction with an arrest to make sure it is supported by probable cause. The rule only relies on the arrest as a triggering mechanism. A separate rule of criminal procedure

exists that allows an arrested person to challenge the arrest prior to the filing of an indictment and to seek a dismissal of the complaint if not supported by probable cause to believe the crime charged was committed or the defendant committed it.  *See* Iowa R. Crim. P. 2.2(4).

**IV. Conclusion.**

Accordingly, the district court properly denied the motion to dismiss filed by Penn-Kennedy.  We vacate the decision of the court of appeals and affirm the judgment and sentence of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**